BYRNES, Justice Pro Tern.*
Richard Allnet, was charged August 21, 1980 in St. Tammany, Louisiana with the first degree murder of Randy Sebble, a violation of La.R.S. 14:30, committed on July 31, 1980. The defendant was tried before a jury on November 9-11, 1981 and found guilty as charged. On November 20, 1981, pursuant to the jury recommendation, the trial court sentenced the defendant to life imprisonment. Defendant, on appeal, urges three assignments of error. These assignments are all interrelated and deal with the trial court’s refusal to grant the defendant a continuance after he was apprised of certain inculpatory statements to be used against him shortly before the start of his trial.
Defendant’s brother, Vincent Allnet, discovered on July 31, 1980 that some of his jewelry was missing. He believed that Owen Meilleur and Randy Sebble, two young boys, had stolen the jewelry. Meilleur is the defendant’s nephew. Randy Sebble was an acquaintance of Meilleur’s. Both of the boys were severely beaten by Vincent Allnet in Allnet’s home on the afternoon of July 31, 1980. When Meilleur recovered from his beating he noticed that Randy Sebble was gone. Upon Vincent Allnet’s insistence, Meilleur went to the Show Boat Lounge, in the “Fat City” area of Jefferson Parish to see Allnet’s daughter and her husband perform. He was driven there by Robert Allnet, the defendant’s son. When Meilleur and Robert Allnet arrived at the lounge, Meilleur spotted Vincent Allnet’s vehicle in the parking lot. Meilleur became suspicious since his uncle had told him he was not going to the lounge that night. When Meilleur got out of the car, Floyd Webb got out of Vincent Allnet’s car and told Meilleur to get in. When Meilleur refused, Webb grabbed him and threw him in the back seat of the car whereupon they drove off. In the back seat with Meilleur were Randy Sebble and Richard Allnet. In the front seat were Vincent Allnet, Kim Kohler and Floyd Webb. Randy Sebble was bleeding and looked as if he had been beaten up. During this ride defendant, Richard Allnet, kept punching Meilleur and hollering at him saying that he was going to kill Meilleur if he did not return the jewelry. They drove to an isolated area of marsh near Fort Pike in Slidell, whereupon defendant forced Meilleur to get out of the car. The other boy, Sebble, was also taken from the car and Floyd Webb started beating on both of them, and shot bullets at their feet to make them jump up and down and dance for him. Meilleur was then kicked in the groin and fell to the ground.
*474 Meilleur’s story as to who actually shot him is not very clear. He first stated:
And I made the sign of the cross when I was on my knees and the next thing I knew, Vincent was telling Richard to shoot them and Richard said, “Are you serious.” and Richard said, “I will show you how serious I am.” And the next thing I knew, I was shot.
It appears that Meilleur meant to say it was Vincent who said “I will show you how serious I am,” because he later said he believed it was Vincent who shot him. However, his testimony on this point is very confusing.
Owen Meilleur’s testimony with regard to who shot and killed Randy Sebble is very clear. After he was shot, Meilleur looked up to see Sebble running to the car saying “You did it. You really did it.” Floyd Webb said “we can’t keep no witnesses,” and he shot and killed Sebble.
The four men then got into their car and drove off towards Slidell. They returned to the scene of the crime approximately 5 to 10 minutes later to make sure that both of the young boys were dead. Meilleur at this point in time feigned death in order to avoid the coup de grace. He remained still even when he was kicked by one of the men. During this time his face was in a red ant pile and he was severely bitten. Once the men left the scene for the second time, young Meilleur dragged himself by his hands to the highway where he flagged down a passing motorist and was taken to the hospital.
Defendant’s version of what transpired is that he went to a bar across the street after work on July 31, 1980. He claims he remained there until 9:00 or 9:30 p. m., then went home. When he arrived home, Vincent Allnet was standing outside and asked him to take a ride with him. Floyd Webb and Kim Kohler were in the car. Defendant claims he saw no weapons at that time. He maintains they drove to a coffee shop on St. Claude and Elysian Fields and picked up Randy Sebble.
According to defendant, Sebble was not forced into the car, but got in voluntarily. Then they drove to the Showboat Lounge in Fat City, where Floyd Webb forced Owen Meilleur into the car. They proceeded to a place near Slidell. Defendant claims that when they got out of the car, Vincent All-net took a shotgun and pistol out of the car. Defendant said he thought Vincent and Floyd Webb were going to “beat them up a little” over the jewelry and leave. He claims he had no intent to kill or hurt anyone. Vincent gave the defendant the shotgun and told Meilleur to lie on the ground. Vincent and Floyd Webb then went over to the defendant and told him to shoot Meilleur. When Richard refused, Floyd told him “You either kill him or else.” Defendant asserts he “shot toward the ground, not to shoot or to kill [Meilleur]”. He claims he only shot because he was afraid they would kill him too.
ASSIGNMENTS OF ERROR I. & II.
Defense counsel filed a prayer for oyer requesting any and all confessions, statements, and admissions by the defendant. In its answer to the prayer for oyer, the state referred the defense to a taped statement by the defendant to a police officer and to grand jury testimony of certain witnesses. On the day trial was to commence, the state filed a second “Notice of Intention to Use Inculpatory Statement,” and an amendment to its “Answer to Prayer for Oyer”. In its amended answer, the state informed the defense of a statement made by defendant to Vincent Allnet, reminding Vincent to “bring the shells”.
Defense counsel contends that the statement was highly prejudicial in that it directly implicated the defendant in the planning and preparation of the crime. According to counsel, this statement, if believed, would destroy the defense theory that the defendant knew nothing of the plan and only participated because of duress. It is defendant’s position that this statement is one of the state’s strongest pieces of evidence.
Defendant argues that the trial court either should not have allowed the state to *475 file the Art. 768 “Notice of Intent to Use Inculpatory Statement” and the “Amended Answer to Motion for Discovery and Inspection,” which would have prevented the state from using the statement at trial, or it should have granted him a continuance, which he requested as soon as he received notice of the statement.
Louisiana Code of Criminal Procedure Article 768 states:
If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
We find no merit in defendant’s contention. The prosecutor testified that although she had prosecuted other participants of the crime prior to this trial, she did not become aware of this particular statement until late Friday afternoon before the trial. She properly notified the defendant of this information and her intent to use it the following Monday morning. This notification certainly met the requirements of Article 768 and therefore assignments of error I and II lack merit.
ASSIGNMENT OF ERROR III.
After the judge allowed the state to amend its answers orally, the defense moved for a continuance in order to further investigate the existence of the statement. The court denied this motion and advised counsel that he would issue any instanter subpoenas requested by defendant. It appears from the record that defense counsel did not avail himself of these instanter subpoenas. He did however call two witnesses to refute the defendant’s alleged statement. The defendant’s employer testified that he was at work from 8 to 5 the day of the murder which is also the day of the alleged statement. The defendant’s son, Robert Allnet, testified that his father was not present in Vincent Allnet’s home at all the day the statement was made. The jury chose not to believe these two witnesses. As noted above defense counsel did not attempt to subpoena any other witnesses to rebut the alleged statement although other members of the Allnet family were known to have been at the Vincent Allnet home that day.
This court has generally declined to reverse convictions on the grounds of denial of a continuance absent a showing of specific prejudice. See State v. Durio, 371 So.2d 1158 (La.1979); State v. Hopkins, 351 So.2d 474 (La.1977). Under the circumstances presented by this case we do not find such specific prejudice. Defense counsel was given the opportunity to subpoena any witnesses he desired to rebut the defendant’s statement. This more than compensated for any potential prejudice caused by denial of the continuance. Moreover, Owen Meill-eur’s testimony that during the ride to Sli-dell defendant punched and threatened to kill him clearly provided sufficient evidence for a jury to find that the defendant had specific intent to kill Randy Sebble as well. This assignment of error therefore lacks merit.
DECREE
For the foregoing reasons this conviction and sentence are affirmed.
AFFIRMED.

 Judges Charles R. Ward, William H. Byrnes, III and David R. M. Williams of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Calogero, Dennis and Watson.